EXHIBIT "F"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------X

JENNIFER STEWART A/K/A JENNIFER DESOUZA,    :

                Plaintiff,    :

         -against-    :

MICHAEL PAUL, COLETTE PAUL, and DAPHNE    :
THOMAS,

                     :

                Defendants.

-------------------------------------------------------------X

**Decision on Traverse Issue**

Index No. 515187/2020

RICHARD N. ALLMAN, REFEREE:

For the reasons that follow, this Court denies that the challenge to the service of process

raised by the defendant Daphne Thomas.

## Background

On August 18, 2020, the plaintiff sued Daphne Thomas and her siblings, Michael and Colette

Paul, seeking in part to void two deeds that had transferred 175 Weirfield Street in Brooklyn from

her (Stewart) to Daphne Thomas and her daughter Shonette Thomas.[1] The plaintiff also sought

monetary damages because Michael Paul allegedly misused a power of attorney she had given him

to take out mortgages against the property. On August 19, 2021, the plaintiff won a default judgment

against the defendants. Subsequently, an inquest was held and the plaintiff won $100,000 in

compensatory and punitive damages from Michael Paul and $279,000 from Michael Paul and

Daphne Thomas. This latter sum is said to represent the excess funds Michael Paul and Daphne

---

[1]    The relationship between Thomas and her daughter was established by the testimony
at the traverse hearing held before this Court. This Court takes judicial notice of the transcript of
the inquest held on March 16, 2022 in order to state the relationship between the named defendants.

Thomas retained after Michael Paul took out mortgages on 175 Weirfield Street in Stewart's name.[2] The judgment signed after the default and inquest also ordered that title to 175 Weirfield Street be returned to the plaintiff and that the defendants Colette Paul and Daphne Thomas be ejected from the premises.[3]

After this judgment was entered on June 1, 2022, Daphne Thomas moved by order to show cause to vacate the judgment on the ground she was never served with the summons and complaint. The Thomas motion was held in abeyance first on November 22, 2022 and again on December 4, 2023 and the matter was referred to a special referee to hear and report on the challenge to service.[4] Although the plaintiff was immediately willing to convert the reference to one of hear and determine, Thomas was at first reluctant to change the reference. But in an email sent to this Court and counsel on March 27, 2024 at 2:21 p.m., Thomas' attorney agreed to a hear and determine reference. Thus, this Court makes a determination of the issue of service.

---

[2] When combined with the interest and costs imposed in the judgment, as of May 25, 2022, the date of the judgment, Michael Paul owed Steward $116,312.50 and he and Thomas together owed her $323,505. NYSCEF Doc. No. 27.

[3] The evidence that Colette Paul ever lived at 175 Weirfield Street is sparse to say the least. At the hearing before this Court, both parties operated on the presumption Colette Paul lived at 285 Hawthorne Street, Brooklyn, where she was served. The only evidence that Colette Paul lived at 175 Weirfield Street comes from the inquest. During the inquest, the plaintiff introduced the two deeds she asked the court to void. In the first of these deeds, the one dated May 23, 2008, Stewart living at 285 Hawthorne Street, transfers 175 Weirfield to Colette Paul, who is said to reside at 175 Weirfield. In the second deed dated July 8, 2015, Colette Paul, residing at 285 Hawthorne Street, transfers 175 Weirfield to Daphne and Shonette Thomas, who both live at 175 Weirfield. Given that the plaintiff asserts the May 23, 2008 deed is a fraud, there is little reason to trust what is written in it.

[4] An order of reference asking that a special referee hear and report on the issue of plaintiff's service of the summons and complaint was signed November 15, 2022 and filed with the clerk on January 27, 2023. Thus no matter which order held the Thomas motion in abeyance this matter was properly referred to this Court.

2

The traverse hearing was held before this Court on June 5, 2023, October 10 and 17, 2023 and February 21, 2024. The witnesses who testified included Aline Frisch Rockman, the process server, Pedro Romas, who testified for the plaintiff, and the defense witnesses Shonette Thomas and Daphne Thomas.[5] The testimony of these witness and the exhibits admitted into evidence, Plaintiff's Exhibits 1, 2 and 4 and Defense Exhibits A, B and D, constitute the record used to make this recommendation. See C.P.L.R. § 2219(a).[6]

Testimony

### The Plaintiff's Case

Aline Frisch had been licensed to serve process in New York for over 20 years at the time of the service in this case. She gave up her license when she moved to Florida in 2022. Frisch was asked to serve Daphne Thomas at 175 Weirfield Street, No. A, in Brooklyn. On August 20, 2020, she left her office in West Hempstead to do this job. Pedro Romas drove her there. She employed Romas to help her with night services in "case there could be a violent situation."[7] Frisch thought she served two people on August 20, 2020 but in fact, according to the affidavits of service she

---

[5] At the start of the hearing and in the post-hearing submissions, Arlene Frisch Rockman is often referred to by the surname Rockman. However, this Court learned, by asking her during the hearing, that she prefers to go by the name Frisch and thus that is how she is referred to throughout this opinion.

[6] Exhibit 1 is an affidavit of service of August 26, 2020, NYSCEF Doc. No. 2 at page 2 of 3 or NYSCEF Doc. No. 45 at page 1; Exhibit 2 is a photograph of the service address; Exhibit 4 is an August 26, 2020 email from Frisch to CivilMapcom; Exhibit A is an affidavit of service on Colette Paul, NYSCEF Doc. No. 2 at page 3 of 3; Exhibit B is an affidavit of service on Michael Paul, NYSCEF Doc. No. 2 at page 1 of 3; and Exhibit D is a photograph of 175 Weirfield Street.

[7] Transcript of June 5, 2023 at 13.

3

prepared, Frisch served three people that evening – two people (Paul defendants) at 285 Hawthorne Street and Daphne Thomas at 175 Weirfield Street. Exhibits 1, A and B.

When Frisch got to 175 Weirfield Street, she saw indications that someone was home. There was a car in the driveway and lights were on in Apartment A. Frisch testified that she gained access to the property and spoke to Thomas. Frisch knew she spoke to Daphne Thomas because Frisch asked for her name. Frisch said she was able to get to the house by opening the gate in front of the house. The gate was not locked. The gate she opened was not in front of the purple car parked in the driveway but to the right of this area. Frisch went to the door and "rang the bell and then I knocked on the door profusely."[8] Daphne Thomas came to the door.

Once Frisch knew Thomas was before her, she gave Thomas the summons and complaint. It seems Frisch cannot remember the description of the person she served because when she was asked to describe the person, she answered by saying the description is in the affidavit of service. Frisch reviewed the affidavit, Exhibit 1, at the hearing and testified that the document "accurately reflects the details of service of a summons and complaint on defendant Daphne Thomas."[9] The testimony about the accuracy of the affidavit was quickly undermined.

Exhibit 1 contains what looks like a time stamp in the upper right corner. Normally, when Frisch printed an affidavit of service, CivilMap, the program she used to record the service details, would place the GPS coordinates in the box superimposed on to the printout. Frisch testified the

---

[8]    Id. at 91.

[9]    Id. at 16.

4

stamp box on Exhibit 1 is not accurate because it does not have the GPS coordinates on it.[10] The missing GPS coordinates was not the only inaccuracy in the affidavit of service. Altogether, three of Frisch's affidavits of service were introduced into evidence. Two of the affidavits concern the service on Michael and Colette Paul and the third on Daphne Thomas. The three affidavits all had the same stamp on them and each was missing the GPS coordinates.[11] All three affidavits aver that the defendants were served on "August 20, 2020 at 07:30 PM." But the Paul affidavits state the Pauls were served at 285 Hawthorne Street in Brooklyn while the Thomas affidavit says she was served at 175 Weirfield Street, Brooklyn. Frisch testified that it took her about 25 minutes to drive from Hawthorne Street to Weirfield Street.[12] Thus the services could not have both taken place at 7:30 p.m. Frisch testified that she first went to Colette Paul's home and served her on Hawthorne Street. She served Thomas later in the evening. Frisch offered the following explanation for the apparent error in the affidavit of service.

---

[10] At one point in her testimony, Frisch seems to say that she realized when she printed out the affidavit of service to sign and send on to the plaintiff's attorney that the time stamp embedded on to the affidavit was inaccurate. Id. at 28. But she signed the affidavit any way. And, Frisch testified at another point that she did not realize the affidavit itself alleged service occurred at the incorrect time (7:30 p.m. instead of 8 p.m.) until two years after the affidavit of service was filed in court. Id. at 84-85.

[11] Each of the stamps embedded on to the affidavits read:
Network Provided
Time – 07:30 PM
Date – August 20, 2020
GPS

[12] In her closing argument, Thomas asserts the homes are about 5 miles apart. Although this fact was not specifically elicited during the testimony, it is fairly accurate. A Google Maps search shows the addresses are 4.7 miles apart.

5

Frisch tried to input the information about service on Thomas when she got back to her car after giving the summons to Thomas. At that time, she noticed there was a problem because she did not see the correct time in the CivilMap app on her phone. When asked to elaborate, Frisch said the program first calls for inputting the date, then the type of service, then the defendant, then the caption, the name of the person being served, the description of the person who is served, and what mode of service is done. The program took all of this information but would not take the time of service. Frisch could not keep going and input the information about the time of service. The program was jammed. Frisch tried to get the correct time by "triangulate [sic] it but the closest tower was still printing out the prior service."[13] By this testimony, Frisch meant the program was stuck on the time the service had been made on Colette Paul. It would not record the new location or time. She asked Romas if he could get the app to work properly but he could not get it either. So eventually, after about 15 minutes spent trying to get the program to work properly, Frisch testified that she took a photograph of the location to memorialize it. Immediately after saying she took the photograph, plaintiff's attorney corrected her – he got Frisch to say that Romas took the photo, which was introduced into evidence as Exhibit 2. The photo was taken with Frisch's Samsung phone.[14]

Frisch testified that she had previously experienced the same issue with the CivilMap app that she endured on the night of August 20, 2020. It had happened to her one month before and it

---

[13]  Transcript of June 5, 2023 at 28.

[14]  Frisch gave similar contradictory testimony about Exhibit 3, which is a photo of the defendant's home that also displays the time and date the photo was taken. Frisch testified that Exhibit 3 is a second photo taken on August 20, 2020 about four minutes after Exhibit 2 was taken. Counsel for plaintiff asked to correct the record on this point. He said the photograph was in fact the Exhibit 2 photo but he had just reveal the time stamp information on the photo and then printed it out with this information displayed. Transcript of June 5, 2023 at 36-40, 42-45, 46-47.

6

happened again after the night of August 20, 2020. From this experience, Frisch learned that the when the program freezes, it does not produce a correct time stamp that is added to the affidavit of service. The program does not record the GPS coordinates and keeps the time as the time of service the last time the program functioned properly.

Each time the program failed, Frisch notified CivilMap. The plaintiff introduced Exhibit 4 to back up Frisch's testimony about the failure on August 20, 2024. This exhibit is an email sent to CivilMap on Monday, August 24, 2020 with the subject line "Civilmap Pro Not Working." The email asks for help because Frisch had been able to use the CivilMap program with a "computer and IOSmobile" but had switched to a Samsung phone that used the Android operating system and the program did not function properly.

On cross-examination, Frisch testified that she did not know that the program malfunctioned when she served Colette Paul.[15] But she also gave contradictory testimony on this point. Later on she said:

> Q. Between the time that you said you served Colette Paul and Daphne Thomas your GPS stopped – started malfunctioning?
> A. It started malfunctioning when I served Colette Paul at 7:30. I didn't know that then.
> Q. Well, how do you know it started at 7:30 when you served Colette Paul?
> A. I don't, but I'm assuming that it started around that time. Any time between that and the next service.
> Q. Was your GPS ever fixed? Was the problem ever resolved?
> A. It got resolved at some point in September and in October, in October they went out of business. They were no longer — yeah. They closed shop in October.[16]

---

[15] There is a basis to think it had malfunctioned; the GPS information for the Paul services did not get stamped on the affidavits of service when they were printed.

[16] Transcript of June 5, 2023 at 97-98.

7

The Defense Case

At the time she testified, the defendant Daphne Thomas had lived at 175 Weirfield Street for 26 years. She lived in one unit at this location and her daughter lived in the other one. Thomas lived alone; her daughter, who worked at night, lived with her two children.

Thomas was shown Exhibit D, a photograph of the front of her house. She said the fence depicted in the photo goes completely around the property. It is a steel fence about six feet high. To enter the property, one must have a key to the gate. Thomas and her daughter are the only ones who have keys.

During 2020, Thomas did not leave her home. She has diabetes and was afraid she might contract Covid. Consequently, Thomas who is 70 years old, relied upon her daughter to do her shopping and collect her mail. Thomas testified that no one came to her home to serve papers on August 20, 2020. And she did not know of any one, a man or a woman, coming to her property between 7:30 p.m. and 8:30 p.m that day. Thomas also said she did not get any papers in the mail in this time period. She described herself as a gray-haired woman who does not wear glasses to see.[17] Although she did not specify precisely when she first learned of this lawsuit, Thomas said it was in a year following 2020.

When questioned on cross-examination, Thomas flushed out her testimony somewhat. She testified that no one came to her house between August 2020 and the end of that year. She said if her daughter went away, her mail stayed in the mailbox until her daughter returned and picked it up.

---

[17] The description of Thomas in the affidavit of service says she wore glasses. On cross-examination, Thomas admitted she used reading glasses. Id. at 47. Of course, it is possible that Thomas used her glasses to look at the papers handed to her. The defense has not made an issue of this possible contradiction, and the plaintiff has not used the possibility Thomas wore reading glasses to support its case. Thus, this Court does not take up this matter in its decision.

8

Thomas did not leave her home for any reason in 2020 or before August 2021. She did not go to the doctor or have any other appointments in this time. She was very concerned about Covid and stayed inside to avoid getting it. Since August 2021, Thomas has been to Guyana (in 2023) and has gone out for doctor's appointments.

Shonette Thomas had also lived at 175 Weirfield Street for 26 years when she gave her testimony. She lived there with her kids and her mom, Daphne Thomas. Shonette Thomas lived on the second floor in a three bedroom apartment. Her mom lived alone on the first floor, where there are two bedrooms. The property is separated from the street by a six-foot-high steel metal fence and "concrete" like posts.[18] If a person did not have a key to the gate, the person would have to scale the fence to get to the door.

Shonette Thomas looked at Exhibit 2, which shows a purple car in the driveway behind the fence, and said that car belonged to her. She owned this car in 2020. Shonette Thomas has a key to open the gate where her car is parked. There is a separate smaller entrance to the property in front of the front door. The same key is used for either entrance through the fence surrounding the property. There is a separate key to open the security gate on the door to the apartment. Only Shonette Thomas and her mom have keys to the outside gate. Thomas had to use the key to open and shut this gate. She said the gate does not automatically lock when it is pulled shut; the key is needed to lock it. The gate is kept locked at all times when Shonette Thomas or her mom left the house. Shonette Thomas could not recall any time in 2020 when the gate was left open.

---

[18] In fact the posts are made of brick and mortar according to the photographs in evidence. Exhibits 2 and D.

9

In Exhibit D, Shonette Thomas pointed out the mailbox where the mail is delivered. It is out on the sidewalk in front of the gate. One must open the gate to get to the mailbox. On cross-examination, Shonette Thomas testified that the mailbox held the mail for four houses, three of which are visible in Exhibit D. Each house has two units so there are a total of 8 mailbox slots in the mailbox. Shonette Thomas has never had something delivered that could not fit into her mail slot in the mailbox.

Shonette Thomas could not recall any time in August 2020 when her mother left the house. Indeed, her mother never left the house from the onset of Covid in March 2020 through November 2020. She did not have any visitors in this time and did not even get her mail – Shonette Thomas got it for her. She also did her mother's shopping. Shonette Thomas, on the other hand, did leave to go to work at Brookdale Hospital where she was a certified nursing assistant. The hours of her employment were 11:00 p.m. to 7:00 a.m throughout all of 2020.

There was a bell for each Thomas apartment in 2020. Shonette Thomas would hear either bell if a bell was rung. Shonette Thomas does not recall getting any papers from a process server in August 2020. She says her mother did not get any papers then. Shonette Thomas got the mail for herself and her mother and no mail from a process serving company arrived. No one, to Shonette Thomas's knowledge, came to the house on August 20, 2020. Shonette Thomas herself got no papers in August 2020.

On cross-examination, Shonette Thomas said she would inherit 175 Weirfield Street if her mother were to die. She also said it takes her about 15 minutes to get to work from home. She said she would arrive home after her shift no later than 7:25 a.m. The kids were home in August 2020, it was summertime. Shonette Thomas would not go to sleep when she got home. She usually stayed

10

up to 4 p.m. or 5 p.m. before going to sleep. Her usual pattern was to sleep for three hours or so. Shonette Thomas said she was a light sleeper and would have heard someone knocking on her mother's door.

Looking at Exhibit 2, Shonette Thomas identified the light that is on directly above her car as coming from her mother's apartment. The lights are off on the second floor, which is Shonette Thomas's apartment. Shonette Thomas was asked about particular windows in her apartment. She said the window above her mother's lighted room is her living room. The light is off in this room. Shonette Thomas's own bedroom is toward the front of the house. It is just to the right of an unlit second-floor window and above the front entrance to the building. There is no light on in Shonette Thomas' bedroom in the photo that is Exhibit 2. In August 2020, Shonette Thomas's younger child (who was 12 then) went to bed around 9 p.m.

## Findings and Conclusions

The plaintiff bears the burden of proving, by a preponderance of the evidence, that service was properly effected. HSBC Bank USA, N.A. v. Rini, 218 A.D.3d 664, 666 (2d Dept. 2023). In this case, the question of whether Daphne Thomas was properly served comes down to a credibility determination. The plaintiff's witnesses said service was made and the defense witnesses said it was not. The main point of discrepancy between the witnesses is whether the gate leading to Thomas' front door was locked on August 20 2020. If it was locked, Frisch would have had to scale a six foot fence to gain entrance and she did not say that she did something like that. This Court resolves this discrepancy because of the subtle but different level of assuredness in the testimony. Daphne Thomas testified that she never went out of the house in August 2020. She never locked the gate in

11

this time period.[19] Thus, she could not in fact say the gate was locked. The most that can be fairly read from her testimony is she assumed it was. Similarly, Shonette Thomas testified the gate was kept locked at all times when she or her mom left the house.[20] Shonette Thomas did not in fact say the gate was locked on August 20; she said she could not recall a time when the gate was left unlocked. Again the testimony yields the implication that it was locked when someone was not at home but that is not necessarily so and that is not the case here. After all both Thomas and her mother would have been home at 8 p.m. on August 20. And, both Frisch and Romas testified unequivocally that they gained entrance through the gate leading to the front door because the gate was unlocked. The gate does not lock automatically. The key had to be used to lock the gate. This circumstance can be inconvenient if one enters the property with one's hands full. It is not beyond the pale that the gate was open and this Court accepts Frisch's and Romas' testimony that it was.

Outside of this discrepancy, there is an even greater problem from the defense perspective. Frisch signed three affidavits that attest to service on three defendants at two different locations at the same time. This is obviously impossible. The locations in the affidavits are about 25 minutes apart. And accordingly, the defense asks this Court to apply the maxim known as "falsus in uno falsus in omnibus." Put simply, this maxim states when a witness gives testimony a portion of which is demonstrably false, the factfinder may choose to discredit or disbelieve the entire testimony given by that witness. See, e.g., Washington Mutual Bank v. Holt, 113 A.D.3d 755, 756-57 (2d Dept.

---

[19]    Transcript of February 21, 2024 at 60.

[20]    The exact testimony is:
Q    When you leave the house, or when your mother leaves the house, do you lock the gate at all times?
A    Yes.
Id. at 13.

12

2014); DiPalma v. State, 90 A.D.3d 1659, 1660 (4th Dept. 2011). Of course, this maxim is permissive not mandatory and it is this Court's duty to determine how much of Frisch's testimony is to be believed. See, e.g., People v. Becker, 215 N.Y. 126, 144 (1915). This Court is entitled to accept other portions of Frisch's testimony if it finds the other portions are true. People v. Barrett, 14 A.D3d 369, 369 (1st Dept. 2005); see also Galeano v. Giambrone, 218 A.D.3d 745, 747 (2d Dept. 2023). In this case the Court is able to accept the other part of Frisch's testimony. It finds the plaintiff presented a satisfactory explanation for why, despite the impossibility represented in the affidavits of service, it is possible to believe Frisch did serve Daphne Thomas. The CivilMap program Frisch used to document the service failed. Frisch had recently switched to a cell phone using an Android operating system and the program did not work well with this system. When the program froze, it did not record the GPS coordinates and set the time of service as the time of the last service inputted when the program functioned properly. Frisch made a fairly contemporaneous report of the problem to CivilMap. This bolsters her testimony.[21] Frisch apparently did not realize the full extent of the problem caused by the jammed program. The program error did not simply

---

[21] The defense tries to make hay out of the fact that Frisch did not report the problem with CivilMap to CivilMap until August 24, four days after the problem arose. But Frisch gave an adequate explanation for the delay that this Court accepts. The service occurred on a Thursday night and Frisch had to travel home that evening. By the time she likely got back to West Hempstead or somewhere else, it is easy to understand why she would not immediately report the problem. Frisch testified she called CivilMap on Friday August 21 but did not get through. She is a religious observer and thus would not have reported the problem on the evening of August 21 or on the next day, August 22. August 23 was a Sunday and CivilMap was not open then. Transcript of June 5, 2023 at 94. Then, Frisch attended to a service remembering the anniversary of the death of her husband. When she gave her testimony it was clear to this Court that the anniversary was an emotional time for Frisch and that she would prioritize this over contacting CivilMap. Given that Frisch performed only five separate services during the pandemic year of 2020, the fact she waited until August 24 to report the problem is understandable. She was not likely to need the program again immediately and indeed she testified she did not serve anyone else in August 2020. The delay was, this Court finds, reasonable. It does not adversely affect her credibility.

13

affect the stamp routinely embedded into the affidavit of service. It also caused the affidavit of service to state the wrong time of service.

Romas corroborated Frisch's testimony by saying he accompanied Frisch to Daphne Thomas' home, watched her serve the papers, tried to get CivilMap to work but could not get it to work properly. The program failure partly explains why all three affidavits ended up stating Frisch served all three defendants at 7:30 p.m. on August 20, 2020. The rest of the explanation of the error in the affidavit falls at the feet of Frisch. She did not review the affidavits she printed out with sufficient diligence. She did not realize the affidavits stated an impossibility for about two years after she signed them. This oversight is a form of negligence but it is not accepted as proof the service did not occur.

Frisch's testimony about the affidavit inaccuracies was admittedly convoluted. She first made it sound as if she realized the GPS coordinates were not imprinted on to the affidavit of service on August 20, 2020. Later on, Frisch testified that she did not realize the program did not work properly until after the affidavit of service was filed with the court; she became aware of the error in 2022. And, Frisch said, she believes she prepared an affidavit to correct the original affidavit. She did not know where this corrective affidavit was and it did not get introduced during the hearing. Likewise, Frisch testified that she took the photograph of the defendant's home after the program error and said two separate photos, Exhibits 2 and 3, were taken. But then she was corrected and said Romas took the photo represented by Exhibit 2 and there was no other photo taken on August 20, 2020. It would be foolish to ignore the fact that Frisch's testimony was not always consistent. But this fact does not lead this Court to conclude that Frisch's testimony is completely unworthy of belief. During her testimony, Frisch demonstrated that she had an imprecise manner of speaking.

14

The inconsistencies are probably due to the fact that the service occurred three years before Frisch gave her testimony, which Frisch herself implied was a long time to remember particular details. In the main, this Court finds, Frisch did in fact serve Daphne Thomas on August 20, 2020. Frisch had a true memory of the service upon Daphne Thomas because of the problems with her app to record service. These problems made the service memorable to Frisch even if all the details would not come back to her accurately.

Finally, the affidavit of service is not the only proof that service was effectuated. When Frisch could not get her program to work properly, Romas, at Frisch's direction, took a photograph of the location so that the service would be documented. This photo was produced by the plaintiff and admitted into evidence as Exhibit 2.[22] The photograph of 175 Weirfield Street shows there are lights on in Daphne Thomas' residence. Shonette Thomas acknowledged that she owned in 2020 the car depicted in the Romas photo. There are no lights on in Shonette Thomas' apartment and that circumstance is generally consistent with when she or her children would likely be asleep. There is no credible reason to suspect Romas and Frisch would drive all the way to Thomas' home and take a picture of it without also serving the summons. On the other hand, it is possible to believe Daphne

---

[22] The same photograph with the time stamp imprinted when the photo was taken was not admitted into evidence because the plaintiff was unable or unwilling to provide a proper foundation for admitting the picture. The time stamp on this photograph indicates it was taken on August 20, 2020 at 8:19 p.m. This would have been valuable corroborating evidence because the time on the photograph jives very well with Frisch's testimony. But it cannot be used by this Court to make a decision in this case. See People v. Bouton, 50 N.Y.2d 130, 137 (1980) (giving a jury an exhibit not received in evidence affects important rights because the unadmitted exhibit has not been tested on cross-examination); People v. Cruz, 14 N.Y.3d 814, 816 (2010) (jury's receipt of a document not in evidence was not harmless error); cf. People v. Kachadourian, 184 A.D.3d 1021, 1029 (3d Dept. 2020) (in a bench trial, the appellate court may presume that the trial court will "mak[e] an objective determination based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision") (quoting People v. Moreno, 70 N.Y.2d 403, 406 (1987).

15

Thomas has a reason to deny receiving the summons – if she admitted she was served, her ownership of 175 Weirfield, a place she had occupied for 26 years, is severely threatened. It is also possible to believe that Shonette Thomas did not corroborate her mother's testimony. There is good reason to suspect Shonette Thomas was asleep when Frisch came to serve the summons. Her testimony that she is a light sleeper does not preclude the possibility that she did not hear anyone at the door, which according to Frisch and Romas, was answered by her mother.

The defendant's challenge to service is rejected. This decision constitutes the order of the Court.

Dated: Brooklyn, New York
September 25, 2024

_Richard N. Allman_
Referee

16

EXHIBIT "G"

FILED: KINGS COUNTY CLERK 01/09/2026 06:58 AM
NYSCEF DOC. NO. 67

INDEX NO. 515187/2020
RECEIVED NYSCEF: 01/08/2026

*~~DEFAULT~~* JUDGMENT
*PARO 17*
MOTION PART of the Supreme
Court State of New York, at the
Courthouse thereof 360 Adams Street
Brooklyn, New York, on
the 2 day December 2025

PRESENT: HON. SAUL STEIN

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF KINGS

-------------------------------------------------------------X

JENNIFER STEWART A/K/A JENNIFER
DESOUZA

Index No. 515187/2020

Plaintiff,

**DECISION AND ORDER**

MICHAEL PAUL, COLETTE PAUL, and DAPHNE
THOMAS

*Cal #6*

Defendants.

-------------------------------------------------------------X

Pursuant to CPLR 2219(a) the following papers were read into this Judgment:
NYSCEF Doc. Nos. 1, 19, 22, 23, 27- 29, 30-58, and 60 - 66

After review of said papers in this matter, it is Order that:

*Defendants Request to Adjorn is Denied,*

**WHEREAS** on August 19, 2021 the Honorable Richard Montelione J.S.C. entered a

Default Judgment Order (NYSCEF Doc. No. 19) disposing Motion Seq No. #001 and holding,

inter alia, "that Plaintiff Jennifer Stewart A/K/A Jennifer Desouza's motion for default

judgment...is granted" and that an inquest be held; and

**WHEREAS**, pursuant to the Court's reference, an inquest was held on March 16, 2022

before the Honorable Joy F. Campanelli J.S.C.; and

WHEREAS, pursuant to said inquest on May 31, 2022, the Court entered a final judgment against Defendants, awarding Plaintiff possession of 175 Weirfield Street and directing Defendants' ejectment, as set forth therein. (NYSCEF Doc. No. 29); and

WHEREAS, On June 21, 2022, Defendant Thomas moved by order to show cause to vacate the Default Judgment, asserting both lack of jurisdiction under CPLR 5015(a)(4) and, alternatively, excusable default under CPLR 5015(a)(1) (the "Vacatur Motion"). (NYSCEF Doc. Nos. 30–38) and on June 21, 2022, the Court signed Defendant Thomas's Order to Show Cause staying enforcement of the May 31, 2022 Judgment (NYSCEF Doc. No. 39). ; and

WHEREAS, by order dated November 15, 2022, this Court referred the matter to a Special Referee for a traverse hearing to determine the propriety of service and held further proceedings in abeyance pending that hearing. (NYSCEF Doc. No. 51, NYSCEF Doc. No. 52); and

WHEREAS, on September 25, 2024, Special Referee Richard N. Allman issued a determination after the traverse hearing, finding that personal service on Defendant Daphne Thomas was duly and properly made and that the Court has personal jurisdiction over her (NYSCEF Doc. No. 57); and

WHEREAS, consistent with the Referee's determination after the traverse hearing—finding proper service on Defendant Daphne Thomas and personal jurisdiction—the CPLR 5015(a)(4) branch of Defendant's motion is hereby denied and with jurisdiction resolved. Defendant's application rests solely on CPLR 5015(a)(1), which requires both a reasonable excuse for the default and a potentially meritorious defense and Defendant Thomas has shown neither; and

NOW, upon due consideration and good cause appearing therefor;

ADJUDGED AND ORDERED, that the June 21, 2022 stay on the execution of the Court's final Judgment entered on May 31, 2022 is hereby vacated.

12/26/25
Date

ENTER:

Hon. Sel Sten J.S.C.

Index # 515187/2020

EXHIBIT "H"

Fill in this information to identify your case:

United States Bankruptcy Court for the:

EASTERN DISTRICT OF NEW YORK

Case number *(if known)*

Chapter you are filing under:

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

☐ Check if this is an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy

06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** | | |
| Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | **DAPHNE**<br>First name<br><br>**PATRICIA**<br>Middle name | First name<br><br><br>Middle name |
| Bring your picture identification to your meeting with the trustee. | **THOMAS**<br>Last name and Suffix (Sr., Jr., II, III) | Last name and Suffix (Sr., Jr., II, III) |

**2. All other names you have used in the last 8 years**

Include your married or maiden names and any assumed, trade names and *doing business as* names.

Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition.

**3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)**

xxx-xx-9652

Debtor 1   **DAPHNE PATRICIA THOMAS**                                    Case number (if known) _____

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |

**4.** Your Employer Identification Number (EIN), if any.

EIN _____                                    EIN _____

**5.** Where you live

**175 WEIRFIELD STREET**
**Brooklyn, NY 11221**
Number, Street, City, State & ZIP Code

**Kings**
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

_____
Number, Street, City, State & ZIP Code

_____
County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** Why you are choosing *this district* to file for bankruptcy

Check one:

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Check one:

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1    **DAPHNE PATRICIA THOMAS**

Case number *(if known)*

| **Part 2:** | Tell the Court About Your Bankruptcy Case |

7.   The chapter of the Bankruptcy Code you are choosing to file under

Check one. (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

■ Chapter 13

8.   How you will pay the fee

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

9.   Have you filed for bankruptcy within the last 8 years?

■ No.

☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

10.  Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?

■ No.

☐ Yes.

| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

11.  Do you rent your residence?

■ No.   Go to line 12.

☐ Yes.   Has your landlord obtained an eviction judgment against you?

☐   No. Go to line 12.

☐   Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1    **DAPHNE PATRICIA THOMAS**                                Case number *(if known)*

---

**Part 3:**    Report About Any Businesses You Own as a Sole Proprietor

| | | |
|---|---|---|
| 12. | Are you a sole proprietor of any full- or part-time business? | ■ No.    Go to Part 4. |
| | | ☐ Yes.    Name and location of business |

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

Name of business, if any

Number, Street, City, State & ZIP Code

Check the appropriate box to describe your business:

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

13.    Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor?*

For a definition of *small business debtor,* see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

**Part 4:**    Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention

14.    Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.

What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property?

Number, Street, City, State & Zip Code

Debtor 1    **DAPHNE PATRICIA THOMAS**    Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |

**15.** Tell the court whether you have received a briefing about credit counseling.

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

■ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ I am not required to receive a briefing about credit counseling because of:

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1    **DAPHNE PATRICIA THOMAS**                                    Case number *(if known)*

| **Part 6:** | Answer These Questions for Reporting Purposes |
|---|---|

**16. What kind of debts do you have?**

**16a.** Are your debts primarily consumer debts? *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

**16b.** Are your debts primarily business debts? *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

**17. Are you filing under Chapter 7?**

■ No.    I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

■ 1–49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**19. How much do you estimate your assets to be worth?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

| **Part 7:** | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ DAPHNE PATRICIA THOMAS**

**DAPHNE PATRICIA THOMAS**                                    Signature of Debtor 2
Signature of Debtor 1

Executed on    **January 28, 2026**                            Executed on
                MM / DD / YYYY                                                MM / DD / YYYY

Debtor 1    **DAPHNE PATRICIA THOMAS**

Case number *(if known)*

| For your attorney, if you are represented by one | I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) |
|---|---|

For your attorney, if you are represented by one

If you are not represented by an attorney, you do not need to file this page.

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

/s/ Karamvir Dahiya
Signature of Attorney for Debtor

Date    **January 28, 2026**
MM / DD / YYYY

**Karamvir Dahiya**
Printed name

**Dahiya Law Offices LLC**
Firm name

**111 John Street**
**Suite 1860**
**New York, NY 10038**
Number, Street, City, State & ZIP Code

Contact phone    **2127668000**

Email address    **karam@dahiya.law**

Bar number & State

Official Form 101                    Voluntary Petition for Individuals Filing for Bankruptcy                    page 7

AVELO MORTGAGE LLC
C/O EDWARD VINCENT, ESQ.
19-02 WHITESTONE EXPRESS
SUITE 302
Whitestone, NY 11357


Capital One Bankruptcy De
PO Box 30285
San Francisco, CA 94130-0285


Jennifer Stewart/Desouza
c/o Michael Hect
Hecht Law Group LLC
571 Elm Street
West Hempstead, NY 11552