Daniel S. Alter
Attorney for Creditor, Jennifer Stewart
360 Westchester Avenue, #316
Port Chester, New York 10573
(914) 393-2388

**Motion Date: May 12, 2026**
**Motion Time: 10:30 a.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

Daphne Patricia Thomas,

      Debtor.
-------------------------------------------------------------x

Chapter 13

Case No. 26-40449(ESS)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RELIEF FROM STAY

Movant and Creditor, Jennifer Stewart a/k/a Jennifer Desouza ("Movant"), the duly adjudicated owner of the real property located at 175 Weirfield Street, Brooklyn, New York (the "Premises"), respectfully moves pursuant to 11 U.S.C. § 362(d)(1) and § 1307(c) for relief from the automatic stay to permit enforcement of the final Order and Judgment of the Supreme Court of the State of New York, County of Kings, dated May 25, 2022, in *Jennifer Stewart a/k/a Jennifer DeSouza v. Michael Paul, et al.*, Index No. 515187/2020, which declared the May 23, 2008 and July 8, 2015 deeds affecting the Premises null and void *ab initio*, awarded possession of the Premises to Movant, and directed the Sheriff of Kings County and/or the New York City Marshal to remove and eject the Debtor and all occupants.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is respectfully referred to the Affirmation of Mitchell Hecht, Esq., submitted herewith, and the exhibits annexed thereto, for a complete record of the underlying state-court proceedings and the procedural history giving rise to this motion.

This motion arises from a fully adjudicated fraud-based ownership and ejectment action concerning the Premises. The underlying action was commenced in 2020 in the Supreme Court of the State of New York, Kings County, entitled *Jennifer Stewart a/k/a Jennifer Desouza v. Michael Paul, et al.*, Index No. 515187/2020 (the "State Court Action"). In that action, Movant sought, among other relief, a declaration that certain deeds affecting the Premises were void *ab initio* due to fraud and sought recovery of possession.

Debtor Daphne Patricia Thomas (the "Debtor") was named as a defendant. After failing to appear or answer, a default judgment was entered against her on September 10, 2021, and the matter proceeded to an inquest on March 16, 2022.

Following the inquest, the Supreme Court entered a final Order and Judgment dated May 25, 2022 (the "Judgment"). The Judgment awarded Movant monetary damages against Michael Paul and Daphne Thomas, jointly and severally, in the principal sum of $279,000.00, together with interest, costs, and disbursements. The Court further declared that the May 23, 2008 deed and the July 8, 2015 deed affecting the Premises were null and void *ab initio*, directed the Register of the City of New York, Kings County, to purge those fraudulent deeds from the record, awarded possession of the Premises to Movant, and commanded the Sheriff of Kings County and/or the New York City Marshal to remove and eject the Debtor and all occupants from the Premises. This was not an interlocutory order. It was a final adjudication of title, ownership, and the right to possession under New York law.

On June 21, 2022, the Debtor moved by Order to Show Cause pursuant to CPLR 5015(a)(1) and (4) to vacate the Judgment. In signing the Order to Show Cause, the Supreme Court temporarily stayed execution of the Judgment pending determination of the motion.

By Order dated November 15, 2022, the Supreme Court referred the matter to a Special Referee for a traverse hearing to determine the propriety of service and held further proceedings in abeyance pending that determination. Following the traverse hearing, Special Referee Richard N. Allman issued a determination dated September 25, 2024, finding that personal service upon the Debtor had been duly and properly effectuated and that the Supreme Court had personal jurisdiction over her.

Thereafter, by Decision and Order dated December 2, 2025, the Supreme Court denied the Debtor's motion to vacate. The court expressly denied relief under CPLR 5015(a)(4), held that jurisdiction had been properly obtained, found that the Debtor failed to demonstrate a reasonable excuse or a potentially meritorious defense under CPLR 5015(a)(1), and vacated the June 21, 2022 stay of execution. The vacatur of the stay restored the full enforceability of the Judgment, including the ejectment directive.

Following restoration of the Judgment's enforceability, Movant delivered the Judgment for enforcement. The New York City Marshal issued and served a Notice of Ejectment and scheduled execution of the ejectment for January 30, 2026.

On January 28, 2026—two days before the scheduled ejectment—the Debtor filed the instant Chapter 13 petition. The petition was skeletal in nature, filed without schedules, without a proposed Chapter 13 plan, and without any evidentiary showing of feasibility or a bona fide intent to reorganize.

This matter does not arise from a landlord–tenant relationship. The underlying State Court Action was a plenary Supreme Court action to void fraudulent deeds and recover possession based upon adjudicated ownership rights. It was not a summary nonpayment or holdover proceeding under RPAPL Article 7. The Judgment conclusively determined that the deeds upon which the

3

Debtor claimed title were null and void *ab initio*. As a result, as of the petition date, the Debtor held no valid ownership interest in the Premises. Enforcement of the Judgment does not divest the estate of property; it effectuates a final judicial determination that the Debtor has no legally cognizable ownership interest in the Premises.

The bankruptcy filing occurred only after entry of a final judgment adjudicating title and possession, after a failed motion to vacate, after a completed traverse hearing confirming jurisdiction, and after the Marshal scheduled the ejectment. The timing and posture of this filing confirm that it was commenced solely to forestall enforcement of a final state-court ejectment judgment, not to reorganize or rehabilitate any legitimate property interest.

## ARGUMENT

### I. LEGAL STANDARD UNDER 11 U.S.C. § 362(d)(1)

Section 362(d)(1) provides that the Court "shall" grant relief from the automatic stay "for cause." The use of the term "shall" renders relief mandatory once cause is established. The Bankruptcy Code does not define "cause," and Congress deliberately left the concept flexible so that bankruptcy courts could evaluate the totality of circumstances. *In re Mazzeo*, 167 F.3d 139, 142–43 (2d Cir. 1999) (holding that the movant bears the initial burden of demonstrating "cause" for relief from the automatic stay under 11 U.S.C. § 362(d)(1), with cause determined based on the specific facts and circumstances of each case).

In *Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1285–86 (2d Cir. 1990), the Court identified a non-exclusive set of factors to guide that determination. The moving party bears the initial burden of establishing cause. *Id.* The *Sonnax* factors provide a structured framework to determine whether continuation of the automatic stay advances the purposes of the Bankruptcy Code or instead merely delays adjudication or enforcement of rights already

determined elsewhere. In identifying those factors, the Second Circuit explained that courts may consider: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending the action; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms. *See Sonnax*, 907 F.2d at 1286. Several *Sonnax* factors are directly applicable here.

### A. First Sonnax Factor: Whether Relief Would Result in a Complete Resolution of the Issues

Relief from the automatic stay would permit complete resolution of the dispute between the parties. The Supreme Court of the State of New York, Kings County, entered a final Order and Judgment dated May 25, 2022 declaring the May 23, 2008 and July 8, 2015 deeds null and void *ab initio*, awarding possession of the Premises to Movant, and directing the Sheriff and/or City Marshal to remove and eject the Debtor and all occupants. After the Debtor moved to vacate, the court conducted a traverse hearing, determined that service was proper and jurisdiction existed, denied vacatur by Decision and Order dated December 2, 2025, and vacated the temporary stay of execution. At that point, the Judgment was fully enforceable.

There are no remaining ownership or title issues to be adjudicated. The validity of the deeds, the issue of possession, and the Debtor's lack of lawful title have already been conclusively determined. The only remaining step is enforcement of the ejectment directive. Lifting the stay would therefore permit final implementation of an already-entered judgment, not further litigation.

### B.  Second Sonnax Factor: Lack of Connection to the Bankruptcy Case

Enforcement of the state court Judgment has minimal connection to this Chapter 13 case and does not interfere with any legitimate reorganization effort. The underlying dispute concerns a single parcel of real property and a bilateral ownership controversy that has already been adjudicated under state law. It does not require interpretation of bankruptcy law, claims reconciliation, avoidance litigation, or estate administration beyond permitting enforcement of an existing judgment.

As set forth in the factual record, the state court declared the Debtor's asserted deeds void ab initio. As of the petition date, the Debtor held no valid ownership interest in the Premises. Maintaining the stay does not preserve an asset for reorganization; it merely suspends enforcement of a final state-court determination that the Debtor lacks title. The skeletal petition, filed two days before the scheduled ejectment, is not tied to any feasible plan to retain property the Debtor does not legally own.

### C.  Fourth Sonnax Factor: Specialized Tribunal with Expertise

The state court is the tribunal vested with authority and expertise to adjudicate issues of real property title, deed validity, fraud, void conveyances, and ejectment. That court conducted the inquest, entered the May 25, 2022 final Judgment, referred and completed a traverse hearing to determine service and jurisdiction, resolved post-judgment motion practice under CPLR 5015, and by Decision and Order dated December 2, 2025 denied vacatur and vacated the stay of execution.

The dispute concerns state real property law, not bankruptcy administration. The tribunal with subject-matter expertise has already adjudicated the merits and restored enforceability of its Judgment. This factor strongly favors permitting enforcement to proceed in the state forum.

### D. Seventh Sonnax Factor: Lack of Prejudice to Other Creditors

Enforcement of the state court Judgment will not prejudice other creditors. The Supreme Court determined that the deeds upon which the Debtor claimed ownership were null and void *ab initio*. Because the Debtor held no valid ownership interest as of the petition date, the bankruptcy estate cannot acquire greater rights under 11 U.S.C. § 541 than the Debtor possessed.

Execution of the ejectment does not remove estate property from the pool available to creditors. It effectuates a judicial determination that the Debtor has no lawful title to the Premises. Other creditors are not deprived of an asset of the estate; rather, the estate never held a cognizable ownership interest in the first instance.

### E. Tenth Sonnax Factor: Judicial Economy

Judicial economy strongly favors relief. The state court conducted an inquest, entered a final Judgment, addressed post-judgment motion practice under CPLR 5015, referred and completed a traverse hearing to resolve jurisdictional challenges, and by Decision and Order dated December 2, 2025 denied vacatur and vacated the stay of execution. The court is fully familiar with the factual record and has already resolved the substantive issues concerning title and possession.

Requiring this Court to revisit or duplicate those determinations would undermine efficient adjudication and invite unnecessary relitigation of issues conclusively resolved under state law.

### F. Eleventh Sonnax Factor: Whether the State Proceeding Is at an Advanced Stage

The parties are well beyond the trial stage in the state proceeding. The matter has been fully adjudicated and reduced to a final Judgment. After the temporary stay was vacated, the New York City Marshal scheduled execution of the ejectment for January 30, 2026. The case was concluded and awaiting enforcement, not trial. The bankruptcy petition was filed two days before the scheduled ejectment. This factor weighs strongly in favor of relief.

### G. Twelfth Sonnax Factor: Balance of Harms

The balance of harms weighs heavily in favor of lifting the stay. Continuation of the stay deprives Movant of possession of property to which she has been adjudicated entitled after full litigation, post-judgment motion practice, and jurisdictional review. By contrast, the Debtor filed a skeletal Chapter 13 petition two days before the scheduled ejectment and has not proposed a feasible plan premised upon retention of a legally cognizable ownership interest in the Premises.

Under these circumstances, maintaining the stay serves only to delay enforcement of a final state-court judgment. The harm to Movant from continued delay substantially outweighs any speculative or unsupported benefit to the Debtor.

These applicable *Sonnax* factors, considered collectively, establish that continuation of the automatic stay does not further the purposes of the Bankruptcy Code and that cause exists to grant relief under 11 U.S.C. § 362(d)(1).

### II. THE BILATERAL NATURE OF THIS DISPUTE FURTHER ESTABLISHES CAUSE UNDER § 362(d)(1)

The nature of this case underscores that continuation of the automatic stay does not advance any legitimate bankruptcy objective. This matter concerns a single parcel of real property and a dispute solely between Movant and the Debtor regarding ownership and possession. It is not a multi-creditor controversy requiring centralized bankruptcy administration. It is not a restructuring

involving competing claims. It is a completed state court adjudication determining that the Debtor's claimed deeds are void *ab initio* and that Movant is entitled to possession.

Under the *Sonnax* framework, the bilateral character of the dispute reinforces multiple factors supporting relief. As discussed, lifting the stay will result in complete resolution of the parties' controversy because title and possession have already been adjudicated. The dispute lacks a meaningful connection to any broader reorganization effort. Enforcement of the state-court judgment does not interfere with claims administration or prejudice other creditors. Judicial economy favors allowing the tribunal that entered the judgment to enforce it.

Bankruptcy protection exists to preserve estate value and promote equitable treatment of creditors as a collective. Where a case centers on a single asset and a fundamentally two-party ownership dispute that has already been reduced to judgment, continuation of the stay serves no collective purpose. Instead, it operates solely to delay enforcement of a final determination of property rights.

Here, the Debtor filed a skeletal Chapter 13 petition two days before the scheduled ejectment, after the state court vacated the stay of execution and denied her CPLR 5015 motion. No plan has been proposed. No feasibility has been demonstrated. The stay presently benefits only the Debtor in her dispute with Movant and does not protect or enhance estate value for the benefit of other creditors.

In these circumstances, the bilateral and litigation-driven nature of this case confirms that continuation of the automatic stay does not further the purposes of the Bankruptcy Code. It instead delays enforcement of a fully adjudicated state-law ownership determination. This provides additional and independent cause to grant relief under 11 U.S.C. § 362(d)(1).

**III. THE PREMISES IS NOT PROPERTY OF THE
ESTATE AND THERE IS NOTHING TO ADMINISTER**

The automatic stay exists to protect property of the estate and preserve value for equitable distribution among creditors. 11 U.S.C. §§ 362(a), 541(a). The bankruptcy estate succeeds only to whatever legal or equitable interests the debtor possessed as of the commencement of the case. The estate cannot acquire greater rights than the debtor held prepetition. *In re Reviss*, 628 B.R. 386, 394 (Bankr. E.D.N.Y. 2021).

Here, the Supreme Court entered a final Judgment declaring the May 23, 2008 and July 8, 2015 deeds null and void *ab initio*. A void deed conveys no title. Because the conveyances under which the Debtor claims an interest were judicially declared nullities, the Debtor held no valid ownership interest in the Premises as of the petition date. If the Debtor possessed no lawful title, the Premises did not become property of the estate under § 541(a). The Bankruptcy Code does not create property rights; it merely recognizes and administers interests that exist under non-bankruptcy law. Where state court has determined that the debtor's claimed ownership interest is void *ab initio*, there is no estate interest to preserve and no asset to administer.

Maintaining the automatic stay under these circumstances does not protect estate property. It merely delays enforcement of a judgment confirming that the Debtor has no lawful ownership interest in the Premises. The absence of estate property provides additional cause to grant relief from the stay under § 362(d)(1).

**IV. THE LIMITED RESIDENTIAL EVICTION EXCEPTION DOES NOT APPLY**

Although Movant seeks relief under 11 U.S.C. § 362(d)(1), clarification is warranted because the Debtor filed this case on the eve of a scheduled ejectment. Section 362(b)(22) provides a narrow exception to the automatic stay for certain residential eviction proceedings involving a

tenant under a lease or rental agreement where the landlord obtained a prepetition judgment for possession. That provision has no application here.

This matter does not arise from a landlord–tenant relationship. It does not involve a lease, unpaid rent, or a summary proceeding under RPAPL Article 7. The state court judgment was entered in a plenary ownership and ejectment action after the state court declared the May 23, 2008 and July 8, 2015 deeds null and void *ab initio* and awarded possession to Movant. The Debtor's Chapter 13 petition does not assert that she is a tenant, does not identify any lease or rental agreement, and does not claim that a landlord obtained a judgment of possession. The temporary protections available under § 362(l), which require certification of a lease and deposit of post-petition rent in true landlord–tenant cases, are likewise inapplicable.

In short, this is not a residential eviction arising from a leasehold interest. It is an adjudicated ownership dispute culminating in an ejectment judgment. The residential eviction exception does not govern or alter the stay analysis in this case.

## V.      BAD FAITH AND DISMISSAL UNDER 11 U.S.C. § 1307(c)

Bad faith constitutes "cause" for dismissal or conversion of a Chapter 13 case under 11 U.S.C. § 1307(c). In *In re Armstrong*, 409 B.R. 629 (Bankr. E.D.N.Y. 2009), the Bankruptcy Court held that a debtor's bad faith may warrant dismissal or conversion and that courts must apply a totality-of-the-circumstances test in determining whether "cause" exists. *Id*. at 633–34. The court emphasized that the inquiry focuses on whether the debtor has abused the provisions, purpose, or spirit of the Bankruptcy Code and whether the filing is fundamentally fair to creditors. *Id*. at 634.

*Armstrong* further explained that relevant considerations include the timing of the petition, the debtor's motive in filing, whether the debtor has misrepresented facts or manipulated the Bankruptcy Code, and whether the filing was intended to defeat state-court litigation. *Id*. at 634–

11

35. The court also reiterated that bankruptcy courts must retain flexibility to prevent abuse of the bankruptcy process. *Id*. at 634.

Applying that framework here compels a finding of bad faith. The Debtor filed this Chapter 13 petition two days before the scheduled ejectment by the City Marshal, after the Supreme Court vacated the stay of execution and denied her CPLR 5015 motion. The filing occurred only after the Debtor exhausted her state-court remedies and immediately before enforcement of a final ejectment judgment. The petition was skeletal, unsupported by schedules or a proposed plan, and unaccompanied by any demonstration of feasibility. Under the totality of the circumstances, the timing and posture of the filing demonstrate that the case was commenced to halt enforcement of a final state-court judgment rather than to effectuate a legitimate reorganization.

Unlike *Armstrong*—where the court ultimately found the debtor's conduct did not rise to the level of bad faith—this case presents the type of litigation-driven filing that the totality test is designed to address. The Debtor's conduct reflects an attempt to use Chapter 13 as a mechanism to delay execution of an adverse ownership judgment. Under *Armstrong* and § 1307(c), such circumstances constitute cause not only to lift the automatic stay but also to dismiss the case.

**CONCLUSION**

For all of the foregoing reasons, the automatic stay is serving no legitimate bankruptcy purpose. Cause therefore exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay. Additionally, the record supports dismissal under § 1307(c). Movant respectfully requests that the Court enter an order granting relief from the automatic stay to permit immediate enforcement of the state-court Judgment, together with such other and further relief as the Court deems just and proper.

Dated:  Port Chester, New York
      March 26, 2026

                Daniel S. Alter
                Counsel for Creditor, Jennifer Stewart
                360 Westchester Avenue  #316
                Port Chester, New York 10573
                (914) 393-2388

                By: */s/ Daniel S. Alter*_____
                   Daniel S. Alter